*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1443**

State of Minnesota,
Respondent,

vs.

Ismael Thiam Dore,
Appellant.

**Filed June 1, 2015
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-13-37808

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Brent S. Schafer, Schafer Law Firm, P.A., Lilydale, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The district court revoked Ismael Thiam Dore's probation because he was charged with two misdemeanors, failed to contact his probation officer, and failed to report to the

workhouse.  On appeal, Dore argues that the district court erred by not advising him of his rights pursuant to rule 27.04 of the Minnesota Rules of Criminal Procedure, by denying his request for a continuance, and by revoking his probation without sufficient evidence and adequate findings.  We affirm.

## FACTS

On February 12, 2014, Dore pleaded guilty in the Hennepin County District Court to aiding and abetting first-degree aggravated robbery.  The district court imposed a sentence of 48 months of imprisonment but stayed the sentence for five years and placed Dore on probation.  The stayed sentence was a downward dispositional departure from the presumptive guidelines sentence of 48 months of imprisonment.  The district court imposed certain conditions of probation, including a prohibition on the use of alcohol and controlled substances and a requirement that Dore continue to be involved with the Youth Links organization.  Dore also was required to contact his probation officer, Deborah Mason, by February 26 and to serve 180 days in the workhouse starting on March 11.

One week later, on February 19, Dore was arrested for disorderly conduct and under-age drinking.  The state charged him with misdemeanor offenses the following day.  In addition, Dore did not contact Mason by February 26.  Furthermore, Dore did not report to the workhouse on March 11.  A warrant for his arrest was issued on March 7, and he was arrested on May 5.

The district court scheduled a probation-revocation hearing but granted Dore several continuances to allow him to resolve the misdemeanor charges and to move to withdraw his guilty plea.  The district court eventually held a probation-revocation

2

hearing on June 5. Dore personally objected to going forward with the probation-revocation hearing because he had not yet moved to withdraw his plea. Dore also stated that he did not want his public defender to represent him. The district court informed Dore that the probation-revocation hearing would go forward that day and that he could either allow his public defender to represent him or represent himself. Based on Dore's responses to the district court's inquiry, the district court discharged Dore's public defender.

Before presenting the state's witnesses, the prosecutor provided Dore with copies of the state's exhibits. In Mason's testimony, she recommended that the district court revoke Dore's probation and execute his sentence. Dore called Porsha Brown, his advocate at Youth Links, to testify as a witness on his behalf, but she was unaware of his probation violations until the hearing. When informed of his opportunity to testify, Dore declined. The district court offered Dore an opportunity to present oral argument and identified for him the relevant issues.

At the conclusion of the hearing, the district court found that Dore violated his probation by drinking alcohol, by committing two criminal offenses, by failing to contact his probation officer, and by failing to report to the workhouse. The district court found that all four violations were intentional and inexcusable. The district court found that "there is no policy favoring probation because [Dore] received a dispositional departure" and that Dore had proved that he was not amenable to probation because he did not "make any attempt to comply with the terms of probation." The district court revoked Dore's probation and executed his sentence. Dore appeals.

# DECISION

## I. Rule 27.04 Advisory

Dore first argues that the district court erred by failing to advise him of his rights in a probation-revocation hearing, as required by rule 27.04 of the Minnesota Rules of Criminal Procedure. That rule requires a district court to advise a probationer of his rights to:

> a. a lawyer, including an appointed lawyer if the probationer cannot afford a lawyer;
>
> b. a revocation hearing to determine whether clear and convincing evidence of a probation violation exists and whether probation should be revoked;
>
> c. disclosure of all evidence used to support revocation and of official records relevant to revocation;
>
> d. present evidence, subpoena witnesses, and call and cross-examine witnesses, except the court may prohibit the probationer from confrontation if the court believes a substantial likelihood of serious harm to others exists;
>
> e. present mitigating evidence or other reasons why the violation, if proved, should not result in revocation; [and]
>
> f. appeal any decision to revoke probation.

Minn. R. Crim. P. 27.04, subd. 2(1)(c). This advisory must occur "[w]hen the probationer initially appears on the warrant or summons." *Id.* "The rights set forth in Rule 27.04, subdivision 2, reflect the rights articulated in *Morrissey v. Brewer*, 408 U.S. 471, 488-89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), and its progeny." *State v. Beaulieu*, 859 N.W.2d 275, 277 (Minn. 2015). The *Morrissey* opinion established

4

parolees' due-process rights when facing revocation of parole, and those rights were extended to probationers in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756 (1973). *Beaulieu*, 859 N.W.2d at 280.

Dore did not preserve this issue for appellate review by making an objection in the district court. Thus, we review for plain error. *Beaulieu*, 859 N.W.2d at 281; *see also* Minn. R. Crim. P. 31.02. Under the plain-error test, an appellant is not entitled to appellate relief on an issue to which no objection was made unless (1) there is an error, (2) the error is plain, and (3) the error affects the appellant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If the first three requirements of the plain-error test are satisfied, we must consider the fourth requirement, whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (quotation omitted). If we conclude that any requirement of the plain-error test is not satisfied, we need not consider the other requirements. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).

Dore is correct that the district court did not read the rule 27.04 advisory in its entirety. The district court's failure to do so is error, and the error is plain. *Beaulieu*, 859 N.W.2d at 281-82. Thus, we consider whether Dore can satisfy the third requirement of the plain-error test, that "the error affected his substantial rights." *Id.* An error affects the defendant's substantial rights "if the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741.

Dore contends that the district court's failure to read the rule 27.04 advisory affected his substantial rights in two ways. First, he contends that the absence of a rule

5

27.04 advisory caused him to enter into an invalid waiver of his right to counsel. *See* Minn. R. Crim. P. 27.04, subd. 2(1)(c)a. Dore's contention is undermined by the fact that the district court actually attempted to persuade Dore to exercise his right to the assistance of counsel, albeit not in the form specified by rule 27.04. The district court also informed Dore of the "serious" potential consequences of the hearing and the benefits of representation by a trained and skilled attorney. The district court's warning provided Dore with sufficient information to allow him to make a knowing, voluntary, and intelligent wavier of his right to counsel. "[T]o determine whether a waiver of counsel is knowing and intelligent, a court should comprehensively examine the defendant regarding the defendant's comprehension of the charges, the possible punishments, mitigating circumstances, and any other facts relevant to the defendant's understanding of the consequences of the waiver." *State v. Camacho*, 561 N.W.2d 160, 173 (Minn. 1997). A defendant also should "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *State v. Worthy*, 583 N.W.2d 270, 276 (Minn. 1988) (quoting *Faretta v. California*, 422 U.S. 806, 835, 58 S. Ct. 1019, 2541 (1975)). The colloquy between the district court and Dore establishes that Dore's waiver of his right to counsel is not invalid.

Second, Dore contends that the absence of a rule 27.04 advisory caused him to not receive notice of the evidence the state intended to introduce to prove a violation of the conditions of his probation. *See* Minn. R. Crim. P. 27.04, subd. 2(1)(c)d. Dore does not explain how the state failed to provide him with sufficient notice of the alleged

6

violations. Dore asserts, "There is no evidence . . . that Appellant was ever given proper notice of the circumstances surrounding the alleged violations." But it is Dore's burden to show that the district court's plain error affected his substantial rights. *Beaulieu*, 859 N.W.2d at 282. Dore does not contend that the state's notice of probation violation was deficient in form or was not served on him or his counsel. *See* Minn. R. Crim. P. 27.04, subd. 1. The record reflects that the prosecutor gave Dore copies of the state's exhibits before presenting the state's case. In short, Dore cannot show that the state failed to provide proper notice or that any lack of notice affected the outcome of the probation-revocation hearing.

We conclude that Dore has failed to demonstrate that the district court's plain error affected his substantial rights. Thus, Dore is not entitled to appellate relief for the district court's failure to give a full rule 27.04 advisory.

## II. Request for Continuance

Dore next argues that the district court erred by denying his request for a continuance of the probation-revocation hearing so that he could retain private counsel.

"The decision to grant a continuance is vested in the sound discretion of the trial court." *State v. Sanders*, 598 N.W.2d 650, 654 (Minn. 1999) (quotation omitted). "A defendant may not demand a continuance to delay the proceedings or by arbitrarily attempting to substitute another attorney at the time of trial." *Worthy*, 583 N.W.2d at 278. "[T]he right of an indigent to have counsel does not give him the unbridled right to be represented by counsel of his choice. Although he may request a substitution of counsel, his request will be granted only if exceptional circumstances exist and the

7

demand is timely and reasonably made." *State v. Vance*, 254 N.W.2d 353, 358 (Minn. 1977). The supreme court has considered the following factors in deciding whether a district court has properly denied a request for a continuance to retain private counsel: at what stage of the case the request was made, the likelihood that the defendant could retain private counsel, and whether the defendant had good cause for dismissing his appointed counsel. *Worthy*, 583 N.W.2d at 278; *Vance*, 254 N.W.2d at 359. A district court's ruling on a defendant's request for a continuance to retain private counsel "is a matter within the trial judge's discretion, and his decision should be based on all facts and circumstances surrounding the request." *Vance*, 254 N.W.2d at 358.

The facts of Dore's request for a continuance are very similar to the facts in *Worthy* and *Vance*, two cases in which the supreme court affirmed a district court's denial of a request for a continuance for purposes of retaining private counsel. *Worthy*, 583 N.W.2d at 278; *Vance*, 254 N.W.2d at 358-59. First, Dore's request was untimely because he waited until the day of his hearing to fire his appointed counsel and request a continuance to retain private counsel. *See Worthy*, 583 N.W.2d at 278 (affirming denial of request for continuance made on day of trial); *Vance*, 254 N.W.2d at 359 (affirming denial of request for continuance made "a few days before trial"). Second, Dore likely would not have been successful in retaining private counsel if he had been granted a continuance. He stated to the district court that he was unsure whether he wished to or could hire private counsel. *See Worthy*, 583 N.W.2d at 278 (noting that defendants could not provide name of private attorney who would represent them); *Vance*, 254 N.W.2d at 359 (noting that defendant "could not be certain of securing counsel"). And third, Dore

8

did not express "good cause" for firing appointed counsel. He said merely that his appointed counsel "does not have my best interests at heart," but he did not provide any details about any deficiencies in her representation. *See Worthy*, 583 N.W.2d at 278 (concluding that defendants' dissatisfaction with "counsels' rather bleak but candid assessment of their case" was not good cause to fire appointed counsel); *Vance*, 254 N.W.2d at 359 (concluding that defendant's "fear" that public defender's caseload would hinder representation was not good cause to fire appointed counsel).

Thus, the district court did not err by denying Dore's request for a continuance of the probation-revocation hearing.

### III. Revocation of Probation

Dore last argues that the district court erred by revoking his probation.

The supreme court has prescribed a three-step analysis for deciding whether to revoke probation. A district court may revoke probation only if the court (1) designates the specific condition that has been violated; (2) finds that the violation was intentional or inexcusable; and (3) finds that the need for confinement outweighs the policies favoring probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980); *see also State v. Modtland*, 695 N.W.2d 602, 606 (Minn. 2006). A district court may find that the third *Austin* factor is satisfied if it finds that any of three sub-factors are present: (1) that confinement is needed to "'protect the public from further criminal activity by the offender,'" (2) that confinement is necessary to provide treatment, or (3) that a further stay of the sentence "'would unduly depreciate the seriousness of the violation.'" *Austin*, 295 N.W.2d at 251 (quoting A.B.A. Standards for Criminal Justice, Probation § 5.1(a)

9

(Approved Draft 1970)). "A district court has 'broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion.'" *Modtland*, 695 N.W.2d at 605 (quoting *Austin*, 295 N.W.2d at 250). "However, whether a lower court has made the findings required under *Austin* presents a question of law which is subject to de novo review." *Id.*

Dore contends that the district court erred in revoking his probation for two reasons. First, he contends that there is insufficient evidence that he violated the conditions of his probation by failing to remain law abiding and by consuming alcohol. Dore concedes that the state introduced sufficient evidence to prove that he violated the conditions of his probation by failing to contact his probation officer and by failing to report to the workhouse. He does not dispute that those violations were intentional. Those two violations are sufficient to justify the revocation of Dore's probation. Thus, the evidence is sufficient to support the district court's findings that Dore committed intentional violations of the conditions of his probation.

Second, Dore contends that the district court did not make an adequate finding concerning the third *Austin* factor. Specifically, he contends that the district court's finding on the third *Austin* factor is too general. The supreme court has emphasized that district courts "must seek to convey their substantive reasons for revocation and the evidence relied upon" and "should not assume that they have satisfied *Austin* by reciting the three factors and offering general, non-specific reasons for revocation." *Modtland*, 695 N.W.2d at 608. In this case, the district court said to Dore: "you've proven that you're unamenable to probation by not even presenting yourself for probation or to make

10

any attempt to comply with the terms of probation, so you're not amenable to probation." The district court's conclusion that Dore is not amenable to probation is relevant to the sub-factor that asks whether continuing probation would "'unduly depreciate the seriousness of the violation.'" *Austin*, 295 N.W.2d at 251 (quoting A.B.A. Standards for Criminal Justice, Probation § 5.1(a) (Approved Draft 1970)). Given the district court's belief that Dore was unlikely to comply with his probation conditions after the hearing, we agree that allowing him to remain on probation would imply that keeping in contact with a probation officer and reporting to the workhouse are conditions that need not be taken seriously, thereby "unduly depreciat[ing] the seriousness" of those violations. *See Austin*, 295 N.W.2d at 251 (concluding that "seriousness of [probationer's] violation would be denigrated if probation were not revoked" based on probationer's failure to report to treatment). Thus, the district court made a sufficiently specific finding on the third *Austin* factor.

Dore also contends that the district court erred by improperly considering the fact that he had received a downward dispositional departure at sentencing. In analyzing the third *Austin* factor, the district court stated, "In this case there is no policy favoring probation because you received a dispositional departure." The sentencing guidelines provide that if a district court is considering whether to revoke a stayed sentence, "Less judicial tolerance is urged for offenders who were convicted of a more severe offense." Minn. Sent. Guidelines 3.B. (2014). The district court's analysis of the third *Austin* factor is consistent with this directive of the sentencing guidelines. Thus, the district

11

court did not err by considering Dore's downward dispositional departure when making its findings on the third *Austin* factor.

**Affirmed.**